UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                                Plaintiff(s),                    **REPORT AND**
                                                                         **RECOMMENDATION**
                -against-                                    CV 09-2990 (JS) (WDW)

BARRY COHAN, D.D.S., DENTAL HEALTH
CARE, P.C., NEW YORK DENTAL PAIN, P.C.
and LONG ISLAND DENTAL PAIN, P.C.,

                                Defendant(s).
------------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

       Before the court, on referral from Judge Seybert, are the plaintiff's motions for default judgment against each of the defendants and a determination of the damages to be awarded should default judgment be granted.  *See* DE[7,8,9 & 10].  I recommend that a default judgment be entered against each of the defendants on the fraud, unjust enrichment and declaratory judgment claims, and that a judgment be entered against individual defendant Barry Cohan but not against the corporate defendants on the RICO claim.  The plaintiff is entitled to $1,006,161.93 in damages on either of the state law claims, and is entitled to RICO treble damages from Cohan in the amount of $3,018,485.79.  The plaintiff is also entitled to prejudgment interest in the amount of $436,738.12 on the state law claims, and the defendants are jointly and severally liable on all of the claims other than RICO.  Further, declaratory judgment should be entered stating that the plaintiff State Farm is not obligated to pay outstanding claims by the defaulting defendants.

**PROCEDURAL BACKGROUND**

This lawsuit was initiated on July 13, 2009, asserting claims of RICO violations, common law fraud and unjust enrichment.  The plaintiff, State Farm Mutual Automobile Insurance Company ("State Farm") also seeks a declaratory judgment that it is not obligated to pay any pending bills submitted by or through the defendants.  The defendants, Barry Cohan, D.D.S., Dental Health Care, P.C., New York Dental Pain, P.C. and Long Island Dental Pain, P.C. (collectively, "the Dental PCs"), were duly served, but failed to answer or appear prior to the time when the motions for default were made on August 11, 2009.  Certificates of the Clerk, noting the default of each of the defendants, were issued on August 12, 2009, and the motions were referred to me on September 30, 2009.  I ordered that the plaintiff submit additional support for the default and damages by October 30, 2009.  DE[16].  That order, which gave the defendants until November 16, 2009 to submit papers in opposition, was also duly served on the defendants.  *See* DE[19].  The plaintiff submitted further papers on October 30, 2009.  DE[17, 18 & 19].  On November 13, 2009, before the deadline for opposition to the award of damages, two attorneys filed notices of appearance on behalf of the defendants, but they filed no papers in opposition to the default judgment motion, and have not filed a motion to vacate the entry of default or taken any other action on behalf of their clients.

**SUMMARY OF CLAIMS**

The plaintiff asserts that the defendants participated in a fraudulent scheme, filing false claims for physical therapy, dental goods and dental services.  The summary of claims as set forth here is taken from the Declaration of attorney Barry I. Levy in support of the motion for default judgment.  DE[17].  The alleged facts underlying the claims are set out at length in the

Complaint, which annexes numerous exhibits.  The defendant Dental PCs, professional dental corporations established and owned by defendant Cohan, did not maintain stand-alone sites, were not leaseholders or owners in the locations from which they operated, did not advertise for patients, and did not employ support staffs.  Levy Decl. DE[17] at ¶4 (I).  Instead, they operated solely through a network of high volume clinics called the "Referral Clinics."  *Id.*  The plaintiff claims that although the Referral Clinics were ostensibly organized to provide a range of healthcare services at a single location to individuals covered by No-Fault insurance policies ("the Insureds"), they actually were organized to facilitate fraudulent treatment and billing schemes aimed at the plaintiff and others, and to provide medically useless services at maximal prices.  *Id.* at ¶4(ii).

The Dental PCs gained access to the Referral Clinics through the payment of kickbacks to the Clinic owners, payments that were disguised as fees to rent or lease space, equipment, or personnel, or for management or billing and collection services.  In fact, the payments were "pay to play" arrangements by which the Clinics provided access to insureds and steered insureds to the Dental PCs.  *Id.* at ¶4(iii).  The insureds had all been in automobile accidents before visiting the clinics, and the employees of the clinics referred them to the Dental PCs without reference to whether they actually had mouth or jaw trauma or pain.  Insureds who questioned the referral were told that the dental care was a mandatory part of the Clinic's "package."  *Id.* at ¶4(iv).

After the fraudulent referral was made, the insureds would typically see Dr. Cohan or another dentist associated with the defaulting defendants as an independent contractor.  The dentist would ask a series of questions and purportedly prepare a report based on the insureds' responses (the "Initial Examination Report").  At times the report was entirely fabricated,

inasmuch as the dentists had never met or treated the alleged insureds, but copied their information from records maintained by the Clinics.  They then submitted a phony bill to insurance companies, including the plaintiff.  In cases where they did perform initial examinations, they "upcoded" them, that is, purported that the exams were lengthier or more complex than they actually were so that they could charge higher fees.  *Id.* at ¶4(v & vi).

The Initial Examination Reports routinely reported symptoms of dental distress whether the insureds actually had such symptoms or whether the insureds had actually met with a dentist.  According to the plaintiff, the purpose of the Initial Examination Reports was to support a fraudulent diagnosis of TMD - tempomandibular joint disorder- caused by the automobile accident.  These false diagnoses were then used by the defaulting defendants to support the submission of false charges to the plaintiff, over and above the charges for the initial exams.  The charges included billing for orthotic devices, diagnostic casting, physical therapy, muscle testing, and range of motion testing, goods and services that had, in many or all cases, never been provided.  *Id.* at ¶4(vii-ix).  To the extent that muscle and range of motion testing had been provided as part of the initial exam, the defendants "unbundled" the tests, that is, falsely contended that the tests had been conducted separately from the initial exam so as to maximize the charges that could be submitted to the plaintiff and other insurers.  *Id.* at ¶4(x).

In the billing submitted to the plaintiff, the defendants either misrepresented or omitted the employment status of the dentists and physical therapists other than Dr. Cohan who allegedly provided treatment, to conceal the fact that they were independent contractors, not employees of the Dental PCs, because the PCs had no right to bill for the services of independent contractors.  *Id.* at ¶4(xi).

The plaintiff has submitted a declaration from John Joseph Ribando, an employee in plaintiff State Farm's Special Investigative Unit.  DE[17], Ex.B.  Mr. Ribando asserts personal knowledge of the facts set forth in his declaration.  *Id.* at ¶1.  In preparing his declaration, he had State Farm's accounting department compile tax identification payment runs ("TIN runs") setting forth the amount of payments made by State Farm to the defendants since April 4, 2002 for claims submitted to State Farm.   The TIN runs show that State Farm paid the following amounts for which it claims recovery in this action:

| Corporation/Individual Paid | Amount Paid by State Farm |
|---|---|
| Dental Health Care, P.C. | $808,072.02 |
| New York Dental Pain, P.C. | 112,305.94 |
| Long Island Dental Pain, P.C. | 63,866.29 |
| Barry Cohan, DDS | 21,917.68 |
| TOTAL | $1,006,161.93 |

DE[17], Ex.B. ¶¶2-8.

Mr. Ribando also annexes a list of lawsuits that are presently pending in the New York Civil Court system in which one or more of the defendants are seeking collection from State Farm on their claims, which the plaintiff alleges are fraudulent and in regard to which it seeks a declaratory judgment.  *Id.* at ¶9.

The plaintiff reports that Dr. Cohan has pleaded guilty to federal criminal charges associated with a fraud scheme perpetrated against the Port Authority of New York and New Jersey and Metropolitan Life Insurance Company, and is awaiting sentencing.  *See* Compl. at ¶6.

Based on the facts alleged in the Complaint, the plaintiff seeks  judgment in its favor on its claims for: (1) declaratory relief; (2) common law fraud; (3) unjust enrichment; and (4) violations of the civil RICO statute, 18 U.S.C. §1962(c), with entry of a declaratory judgment, compensatory and treble damages, and pre-judgment interest.

**DISCUSSION**

Entry of a default judgment is appropriate when "the adversary process has been halted because of an essentially unresponsive party." *Dae Woo Kim v. City of New York*, 1990 U.S. Dist. LEXIS 7137, at *5 (S.D.N.Y. June 11, 1990) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Here, the defendants have failed to answer the complaint or respond to the motions for default judgment despite the appearance of counsel after the motions were made and referred. They are non-responsive parties and I recommend that default judgments be entered against each of them.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1993). Once a defendant has defaulted, a "plaintiff must . . . establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." *Agamede, Ltd. v. Life Energy & Tech. Holdings, Inc.*, 2007 U.S. Dist. LEXIS 4698, *3 (E.D.N.Y. Jan. 23, 2007). "While a default constitutes an admission of all the facts 'well pleaded' in the complaint, it does not admit any conclusions of law alleged therein, nor establish the legal sufficiency of any cause of action." *American Diamond Tool & Gauge, Inc. v. DeBeers Consolidated Mines, Ltd.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000).

As to damages, a default "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Abramov,* 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant must prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries

pleaded." *Greyhound,* 973 F.2d at 159.  An evidentiary hearing is not required so long as there is a basis for the damages awarded.  *Transatlantic Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)(citations omitted).  Detailed affidavits and other documentary evidence can provide this basis.  *See, e.g., Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 508 (2d Cir. 1991).  Here, the plaintiff has submitted the Declaration of its attorney Barry Levy, which annexes numerous exhibits in support of the claims, including the declaration of Mr. Ribando, and they provide an adequate basis for a consideration of damages without the necessity of a hearing.  I turn to the various claims made by the plaintiff.

**Declaratory Judgment:**

The plaintiff seeks declaratory relief providing that it is not obligated to pay outstanding claims by the defaulting defendants, and I recommend that such relief be granted.  Declaratory relief is appropriate: (1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.  *See E.R. Squibb & Sons, Inc. v. Lloyd's & Co.,* 241 F.3d 154, 175 (2d Cir. 2001).  In deciding whether to award declaratory relief, a federal court applies the state substantive law of the forum in which it sits.  *NAP, Inc. v. Shuttletex, Inc.,* 112 F. Supp. 2d 369, 372 (S.D.N.Y. 2000).  Here, State Farm states that its request for declaratory relief is based on the defendants' pervasive scheme, which sought, and continues to seek in the pending lawsuits by the Dental PCs, payment of No-Fault benefits for fraudulent billing submitted for medically unnecessary services, services that were never provided, or services provided by independent contractors rather than by employees of the Dental PCs.

This court has granted declaratory relief under similar circumstances in a number of cases. *See, e.g., State Farm v. Bronx Healthcare Medical, P.C.,* 08-CV-4912(LDW) (E.D.N.Y. Feb. 26, 2009)(defaulting defendants not entitled to seek or collect no-fault benefits from State Farm[1]); *Perfect Dental, PLLC, v. Allstate Insurance Company,* 538 F. Supp. 2d 543, 549 (E.D.N.Y. 2007) (granting declaratory judgment in favor of insurers relating to unpaid claims by Dental PCs for services performed by independent contractors); *see also State Farm Mutual Auto. Ins. Co. v. Kalika,* 2007 U.S. Dist. LEXIS 90322 (E.D.N.Y. Dec. 7, 2007) (denying non-defaulting defendants' motion to dismiss claim for declaratory judgment that it was not obligated to pay outstanding claims for medically unnecessary equipment); *State Farm Mutual Auto. Ins. Co. v. Grafman,* 2009 WL 2998213 (E.D.N.Y. Sept. 21, 2009)(denying non-defaulting defendants' motion to dismiss insurer's claim for declaratory judgment that it was not obligated to pay outstanding no-fault claims). Considering the well-pleaded allegations in the Complaint, I find that the plaintiff has established a right to entry of a declaratory judgment that it is not obligated to pay outstanding claims by the defaulting defendants and recommend that such relief be granted.

**Fraud**

A claim for common law fraud under New York law requires a showing that (1) the defendants made a misrepresentation or omission of material fact; (2) the misrepresentations and/or omissions were made with the intent to deceive the plaintiff; (3) the plaintiff justifiably relied upon the misrepresentations/omissions; and (4) the plaintiff's injury was caused by the

---

[1]The Judgment in *Bronx Healthcare* was recently vacated in part owing to a settlement between State Farm and some of the defaulting defendants.

defendants' misrepresentations and/or omissions.  *See Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91, 98 (2d Cir. 1997).  A party pleading fraud must state with particularity the circumstances constituting fraud.  *See* Fed. R. Civ. P. 9(b).  To plead fraud with particularity, the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.  *Gerritsen v. Glob Trading, Inc.,* 2009 WL 262057, *6 (E.D.N.Y. Feb. 4, 2009) (citing *Anatian v. Couts Bank (Switzerland), Ltd.,* 193 F.3d 85, 88 (2d Cir. 1999)(internal quotation marks and additional citations omitted).  Further, where multiple defendants are alleged to have committed fraud, the complaint must allege specifically the fraud perpetrated by each defendant.  *Id.* (citing *Bezuszka v. L.A. Models, Inc.,* 2006 WL 770526, *13 (S.D.N.Y. Mar. 24, 2006)(internal quotation marks and additional citations omitted).  Intent to defraud may be alleged generally.  *See* Fed. R. Civ. P. 9(b).

The Complaint and the exhibits annexed to it sufficiently set forth facts in support of the fraud claims against each of the defendants.  The false statements include misrepresentations about treatment and care, dates of service, the existence/extent of the insureds' injuries, the necessity of the goods and services allegedly provided, whether the goods and services were actually provided, upcoding and unbundling for services, and the legal relationship between the Dental PCs and the providers of services and their eligibility under the No-Fault laws[2].  The exhibits to the Complaint include copies of allegedly fraudulent Initial Comprehensive

---

[2] As the plaintiff explains, under New York's no-fault laws, an insurer is only obligated to pay benefits directly to providers of health care services if they have a proper assignment of benefits.  *See* DE[18] at 8, n.3, citing NYCRR §65-3.11(a).  Thus, if services are provided by an independent contractor and not an employee of the professional corporation, the PC is ineligible to bill or recover for the healthcare services because it has not provided them (citing cases).

9

Examination Reports, with names and dates (*see* Complaint, Ex. 5), and allegedly fraudulent Claim Forms with similar details, along with charts that comprise a Representative Sample of Fraudulent Dentistry and Physical Therapy Charges. *Id*., Exs.10 & 11. State Farm has sufficiently alleged the elements of intentional fraud, and a default judgment on that claim should be entered. *See Liberty Mutual Ins. Co. v. The Best Bus Ride, Inc.,* 2009 WL 1605541 (E.D.N.Y. June 5, 2009)(entering default judgment on fraud claims where plaintiff sufficiently alleged elements of intentional fraud: representation of fact, which is false and known to be false when made, offered to deceive another with the intention to induce the other to act or refrain from acting, and reliance upon the representation which causes injury); *see also* DE[18] at 8 and cases cited therein, including *Universal Acupuncture Pain Services, P.C. v. State Farm Mutual Auto. Ins. Co.,* 196 F. Supp. 2d 378, 388 (S.D.N.Y. 2002) (finding fraud in falsification of records by professional corporation to indicate that it provided medically necessary treatment).

**Unjust Enrichment**

State Farm also seeks entry of judgment on its unjust enrichment claim. to prevail on a claim of unjust enrichment under New York law, a plaintiff must establish (1) that the defendant benefitted, (2) at the plaintiff's expense, and (3) that "equity and good conscience require restitution." *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir. 2000). "The essence of such a claim is that one party has received money or a benefit at the expense of another." *Id.* (internal quotation marks and citations omitted). Here, the Complaint amply alleges that the defendants received money from the plaintiff and thus benefitted at the plaintiff's expense, and I find that equity and good conscience require restitution. Thus, I recommend that a default judgment be granted on the claim of unjust enrichment.

**Prejudgment Interest**

The plaintiff argues that it should receive pre-judgment interest on its fraud and unjust enrichment claims. DE[18] at 12. On those state law claims, this court must look to New York law regarding prejudgment interest. The purpose of prejudgment interest is to compensate the plaintiff for loss of the funds ultimately awarded, and we find such an award to be appropriate on the state law claims. CPLR §5001 provides that interest "shall be computed from the earliest ascertainable date the cause of action existed." The plaintiff here asks that it be computed from the first day following the year in which the payments were made on the fraudulent claims by State Farm to the defendants. The plaintiff's attorney, Barry Levy, sets forth the calculation of interest in his Declaration at Exhibit E, using a rate of 9%, and the court accepts that calculation, which amounts to $436,738.12, and recommends that it be awarded.

**RICO Claim**

The plaintiff also seeks judgment on its RICO claim against all of the defendants. The RICO statute, 18 U.S.C. §1962(c), makes it "unlawful for any person engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . ." To plead a RICO claim, a plaintiff must allege: (1) a violation of the RICO statute, (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962. *See Allstate Ins. Co. v. Valley Physical Medicine & Rehabilitation, P.C.,* 2009 WL 3245388, *3 (E.D.N.Y Sept. 30, 2009) (internal quotation marks and citations omitted). Thus, the plaintiff has two pleading burdens. *Id.* The complaint must first allege that the defendant has violated the substantive RICO statute, known as "criminal RICO." To plead a substantive RICO violation, the plaintiff

11

must allege: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.[3] *Id.; see also State Farm Mutual Auto. Ins. Co. v. Grafman,* 2009 WL 2998213, *10 (E.D.N.Y. Sept. 21, 2009)(internal citations and quotation marks omitted). Second, the plaintiff must allege that it was injured in its business or property by reason of the conduct constituting the RICO violation. *Valley Physical,* 2009 WL 3245388 at *3 (citing *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir. 1983)). Where a RICO violation is predicated on fraud, Rule 9(b) of the Federal Rules of Civil Procedure must also be satisfied.

The plaintiff here asserts a claim pursuant to 18 U.S.C. §1962(c), which makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Under this section, "the RICO 'person' must conduct the affairs of the RICO 'enterprise' through a pattern of racketeering activity." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir. 1994). In this regard, the "person" and the "enterprise" must be distinct. *See Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161 (2001)(reiterating "basic principle that to establish liability under §1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person' and (2) an 'enterprise' that is not simply the same 'person'

---

[3]Some courts express these requirements as four elements, holding that RICO plaintiff must establish: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See, e.g., City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 424, 439 (2d Cir. 2008); *Allstate Ins. Co. v. Halima,* 2009 WL 750199, *3 (E.D.N.Y. Mar. 19, 2009).

referred to by a different name.") Courts have also held that the enterprise and the pattern of activity must be distinct. *See, e.g., United States v. Turkette,* 452 U.S. 576, 583 (1981)(enterprise "is not the 'pattern of racketeering'; it is an entity separate and apart from the pattern of activity in which it engages."); *Maersk, Inc. v. Neewra, Inc.,* 2009 U.S. Dist. LEXIS 119487, *74 (S.D.N.Y. Dec. 17, 2009); *Schmidt v. Fleet Bank,* 16 F. Supp. 2d 340, 344 (S.D.N.Y. 1998). That requirement seems, however, to have been abrogated by the recent Supreme Court decision in *United States v. Boyle,* 129 S. Ct. 2237 (2009), as discussed *infra*. The pleading requirements for a RICO claim are complex and strictly applied, and I turn now to an examination of the sufficiency of the pleadings in this case.

The plaintiff argues, first, that it has sufficiently alleged that the defendants constitute an "association-in-fact enterprise" for RICO purposes. RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact though not a legal entity." 18 U.S.C. §1961(4). The Supreme Court, in *Turkette,* 452 U.S. at 583, defined an enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct," a definition that was recently reiterated by the court in *Boyle,* 129 S. Ct. 2237 (2009). *Boyle* seems, however, to have loosened the requirement that the enterprise must be ascertainably distinct from the pattern of activity. *Boyle* clarified that an association-in-fact enterprise must have (1) a purpose, (2) relationships among those associated with the enterprise, and (3) sufficient longevity to permit the associates to pursue the purpose. 129 S. Ct. at 2245-46; *and see McGee v. State Farm Mut. Auto. Ins. Co.,* 2009 WL 2132439, *4 (E.D.N.Y. Jul. 10, 2009) (noting that *Boyle* "establishes a low threshold for pleading [an association-in-fact] enterprise, requiring only 'a group of [entities]

13

associated together for a common purpose of engaging in a course of conduct' . . . pleading a 'hierarchical structure' is not necessary."). *Boyle* noted that the breadth of Rico's enterprise concept is narrower than that of other federal laws, and that proof of a pattern of racketeering activity may be sufficient in a particular case to permit an inference of the enterprise's existence. *Id*. While the allegations in the Complaint here may not have met the requirement that the enterprise and pattern of activity be separate, those allegations do sufficiently plead an association-in-fact enterprise involving the defendants' common purpose and course of conduct with sufficient longevity. That, however, does not end the enterprise inquiry.

As noted earlier, a plaintiff must "allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner,* 533 U.S. at 161-62; *see also Valley Physical,* 2009 WL 3245388 at *5 (internal citations omitted). An associated-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct, the existence of which is proven by evidence of an ongoing organization, formal or informal, and by evidence that the various associates functioned as a continuing unit. *Valley Physical,* 2009 WL 3245388 at *6. The distinctness doctrine requires a plaintiff to demonstrate that each RICO person is legally separate from the RICO enterprise, while the association-in-fact requirements help ensure that distinctiveness is not achieved by simply tacking on entities to the enterprise which do not in fact operate as a "continuing unit' or share a 'common purpose.' *Id.* (citations omitted).

Here, the plaintiff defines the enterprise as the "Cohan Dental Network Enterprise," consisting of the individual and corporate defendants. Compl., ¶87. Paragraphs 87 to 93 of the Complaint summarize the RICO allegations that are made throughout the Complaint, and

14

include, *inter alia,* claims that Dr. Cohan acted as the owner, sole shareholder, director and officer of the Dental PCs and that the entities acted together such that the "Cohan Dental Network enterprise is distinct from and has an existence beyond the individual Dental PCs and the pattern of racketeering . . ., in that it retained or contracted with technicians, dentists . . . and other administrative personnel to create the false appearance of legitimate dental service providers." Compl., ¶89. The Complaint also alleges that Cohan set up each of the Dental PCs, which had no employees of their own, and that "each of the defendants is or was employed by and/or associated with the Cohan Dental Network Enterprise." *Id.,* ¶90. These do not amount to well-pleaded allegations that would allow the court to infer that the Dental PCs are distinct from the enterprise, although such a conclusion can be drawn as to Dr. Cohan.

The Complaint alleges, in essence, that Cohan created the Dental PCs for the sole purpose of perpetrating the fraud against insurance companies. He was the sole shareholder, and the PCs had no other officers, directors or employees. It is difficult, under those circumstances, to imagine how they have any existence outside of the enterprise.[4] The enterprise is merely the corporate "persons," along with Dr. Cohan, by another name. Cohan is the fourth member of the association-in-fact, but he is also a 'person' distinct from it, based on the reasoning in *Cedric Kushner*. In that case, the Supreme Court considered whether Don King, the president and sole shareholder of a corporation[5], was a separate person for RICO purposes, where the plaintiff had

---

[4] I note that the plaintiff offers no argument in regard to the distinctiveness of person/enterprise issue in its Memorandum of Law in Support of the motion for default judgment. DE[18].

[5] King's corporation, which appears to have conducted activities outside the scope of the racketeering activity, was also named as a defendant in the action, but *Cedric Kushner* does not discuss the corporation's liability as a RICO defendant. It discusses the corporation only in its context as the enterprise and King's relationship to it.

claimed that he conducted the corporation's affairs as a pattern of racketeering activity. The Court held that a "corporate owner/ employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status," and they found "nothing in the statute that requires more 'separateness' than that." 533 U.S. at 163. Thus, Cohan is distinct from the three Dental PCs and, by extension, can be found to be a person distinct from the enterprise comprised of himself in association with the Dental PCs. *Cedric Kushner* makes clear that RICO liability can be imposed on individual corporate employees, officers or agents who conduct the affairs of their company to engage in racketeering activities, as Cohan has done here.

I find that the Dental PCs are not, based on the allegations in the Complaint, persons distinct from the association-in-fact enterprise, and thus recommend that a default judgment should not be entered against them on that claim. Nonetheless, I will consider whether the remaining RICO pleading requirements are met as to them, so that in the event Judge Seybert disagrees with my recommendation, the Report will be complete.

Thus, I turn next to the element of "participation." The plaintiff notes that the Supreme Court has interpreted "participation" in the RICO context to mean "participation in the operation or management of the enterprise." DE[18] at 15 (citing *DeFalco v. Bernas,* 244 F.3d 286, 309 (2d Cir. 2001)(citing *Reves v. Ernst & Young,* 507 U.S. 170, 179-185 (1993)). Under the operation or management test, in order to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs, "one must have some part in directing those affairs." *De Falco* at 309; *see also AIU Ins. Co. v. Olmecs Medical ,* 2005 WL 3710370, *8 (E.D.N.Y. Feb. 22, 2005). RICO liability is not limited to those with primary responsibility, nor to those with a

16

formal position in the enterprise, but some part in directing the enterprise's affairs is required. *Id.* In this Circuit, the "operation or management" test is rigorously applied. *Olmecs Medical,* 2005 WL 3710370 at *8. But the test "typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." *First Capital Asset Management, Inc. v. Satinwood, Inc.,* 385 F.3d 159, 176 (2d Cir. 2004); *see also Automated Teller Machine Advantage LLC v. Moore,* 2009 WL 2431513, *7 (Aug. 6, 2009). Under the test, it is not enough to merely take directions and perform tasks that are necessary and helpful to the enterprise . . . or provide goods and services that ultimately benefit the enterprise. Instead, the key question is "whether the provision of these services allows the defendant to direct the affairs of the enterprise." *Id.* (internal citations and quotation marks omitted).

     While there is no question that Dr. Cohan participated in the enterprise, there is a question as to whether the Dental PCs can be said to have "directed" its affairs. The plaintiff argues that the PCs "provided the appearance of legitimacy and the corporate structure necessary to carry off the scheme - indeed, without their participation, there would have been no opportunity to accomplish the fraud." DE[18] at 16. While it is far from clear whether, on the facts alleged in the Complaint, the plaintiff would be able to ultimately prove RICO "participation" by the Dental PCs, the "'operation or management' test is a low hurdle to clear at the *pleading* stage," and the defendants' default has limited this court's review to the pleadings. *See Maersk,* 2009 U.S. Dist. LEXIS 119487 at *78 (italics in original)(citing *City of New York v. Smokes-Spirits.com, Inc.,* 541 F.3d 425, 449 (2d Cir. 2008) and noting difficulty of determining with any certainty whether defendants "participated" for RICO purposes when defendants refused to be deposed). Thus, on this motion for default judgment, I find that the participation

17

element is adequately pleaded as to all defendants. *C.f. State Farm Mutual Automobile Ins. Co. v. CPT Medical Services, P.C.,* 2008 WL 4146190 (E.D.N.Y. Sept. 5, 2008)(on motion to dismiss, finding participation pleading satisfied in circumstances similar to those herein).

The racketeering element is also sufficiently pleaded. "Racketeering activity' is defined to include specific enumerated crimes, including mail fraud, and here, the predicate acts alleged in the Complaint are violations of the federal mail fraud statute, 18 U.S.C.§1341. *See* 18 U.S.C. §1961(10(B). To meet the well-pleaded allegation standard, the plaintiff must adequately plead the elements of mail fraud, that is, it must allege that the defendants engaged in a scheme to defraud, to get money or property, furthered by the use of the mails. *See Grafman,* 2009 WL 2998213 at *10. The Complaint more than adequately alleges the existence of a scheme to defraud and a specific intent to defraud. And, the plaintiff argues, the master claim/billing charts attached to the Complaint as Exhibits 10 and 11, along with the numerous references in the Complaint "demonstrating the pervasive nature of the fraudulent billing practices, which involved the use of the United States mail system, sufficiently allege the use of the mails. I agree.

Moreover, there was a "pattern" of racketeering activity. Such a pattern must consist of "at least two acts of racketeering activity undertaken within 10 years. *See* 18 U.S.C. §1965(10. The Complaint must allege facts showing that "racketeering predicates are related, and theat they amount to or pose a threat of continued criminal activity." *Valley Physical Medicine*, 2009 WL 3245288 at *7. "Relatedness exists when the predicate acts 'have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Maersk, Inc.,* 2009 U.S. Dist. LEXIS

119487 at*71(quoting *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240 (1989)). The allegations in the Complaint plainly satisfy the relatedness element. Continuity can be alleged as either a close-ended pattern - a series of related predicate acts extending over a substantial period of time - or an open-ended pattern - one that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed. *Id*. Here, the Complaint alleges a pattern of racketeering activity that would constitute either pattern, one which began in 2000 and continues with the attempts by the Dental PCs to collect payment from the plaintiff. Thus, the Complaint satisfies this pleading requirement.

With these findings in mind, I further find that the Complaint sets forth well-pleaded allegations of a violation of the RICO statute, an injury to the plaintiff's business or property; and that the injury was caused by the violation of Section 1962.

**Treble Damages**

The RICO statute provides that "any person injured in his business or property by reason of a violation of section 1962 . . . shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. §1964(c). If a default judgment on the RICO claim is entered against Dr. Cohan as recommended, the plaintiff is thus entitled to treble damages, and courts in this Circuit have awarded such damages on default judgments. *See, e.g., D'Orange v. Feely,* 101 F.3d 1393 (2d Cir. 1996); *Gragg v. International Management Group (UK), Inc.*, 2009 WL 1140490 (N.D.N.Y. Apr. 24, 2009). Accordingly, State Farm should be awarded judgment in the amount of $3,018,485.79 on its RICO claim against Cohan, representing three times the amount of money paid to the defendants on their fraudulent billing. While the plaintiff is also entitled to reasonable attorneys' fees, it has presented no

documentation in support of such fees and they cannot be awarded at this time.

**Joint and Several Liability**

The plaintiff seeks the imposition of joint and several liability as to the defendants, and I agree that such liability should be imposed as to the state law and declaratory judgment claims. The Complaint alleges facts establishing that the defendants acted jointly and/or concurrently through the control of Dr. Cohan to produce a single injury, and they should thus be held jointly and severally liable for State Farm's damages on the fraud and unjust enrichment claims but not on the RICO claim or treble damages, for which Dr. Cohan is solely liable. *See* DE[18] at 18 and cases cited therein.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the plaintiffs and defendants by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
          December 30, 2009

                      /s/ William D. Wall
                      WILLIAM D. WALL
                      United States Magistrate Judge