Case No. CV 09-02990 (JS) (WDW)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                                        Plaintiff,

-against-

BARRY COHAN, D.D.S.,

-and-

DENTAL HEALTH CARE, P.C.,
NEW YORK DENTAL PAIN, P.C.,
LONG ISLAND DENTAL PAIN, P.C.,

                                        Defendants.

## MEMORANDUM OF LAW ON BEHALF OF STATE FARM
## MUTUAL AUTOMOBILE INSURANCE COMPANY IN OPPOSITION TO
## DEFENDANTS' MOTION TO VACATE DEFAULT

RIVKIN RADLER LLP
Attorneys for Plaintiff,
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000

Of Counsel:
Barry I. Levy, Esq. (BL 2190)
Michael A. Sirignano, Esq. (MS 5263)
Max Gershenoff, Esq. (MG 4648)

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................... 1
FACTS AND RELEVANT PROCEDURAL HISTORY ..................................................... 3
ARGUMENT ......................................................................................................................... 6
    I.    The Standards to Vacate Default ................................................................... 6
    II.   Defendants' Defaults Were Willful ............................................................... 7
    III.  Defendants Fail To Present a Meritorious Defense .................................... 11
    IV.  State Farm Is Prejudiced By Vacatur of the Defaults .................................. 14
    V.   Defendants' Remaining Arguments In Support of Vacatur Are Meritless ... 15
CONCLUSION .................................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

Am. Alliance Insurance Co. v. Eagle Insurance Co.,
   92 F.3d 57 (2d Cir. 1996)...........................................................................................7

Enron Oil Corp. v. Diakuhara, 10 F.3d 90 (2d Cir. 1993).............................................7, 11

Gesualdi v. Tapia Trucking, Inc.,
   2009 U.S. Dist. LEXIS 82958 (E.D.N.Y. 2009)..........................................7, 10, 11, 13

Hernandez v. La Cazuela de Mari Restaurant, Inc.,
   538 F. Supp. 2d 528 (E.D.N.Y. 2007) ....................................................................7, 9

Richardson v. Nassau County, 184 F.R.D. 497 (E.D.N.Y. 1999) .......................................7

SEC v. Breed, 2004 U.S. Dist. LEXIS 16106 (S.D.N.Y. 2004) .........................11, 13, 14

SEC v. McNulty, 137 F.3d 732 (2d. Cir. 1998).............................................................7, 10

## STATUTES

Fed. R. Civ. P. 55(c) ..........................................................................................................6

**PRELIMINARY STATEMENT**

Plaintiff, State Farm Mutual Automobile Insurance Company ("Plaintiff" or "State Farm") respectfully submits this memorandum of law in opposition to the motion by defendants Barry Cohan, D.D.S. ("Dr. Cohan"), Dental Health Care, P.C. ("Dental Health"), New York Dental Pain, P.C. ("NYDP") and Long Island Dental Pain, P.C. ("LIDP") (collectively the "Defendants") to vacate Defendants' defaults.

Defendants' motion is devoid of all merit. Defendants admit service of State Farm's complaint in July 2009 and admit that Dr. Cohan met with his counsel days later. Defendants willfully defaulted as they did nothing while State Farm filed applications for certificates of default in August 2009; did nothing after the Clerk of the Court issued the certificates of default in August 2009; and did nothing after State Farm formally filed for default judgments in October 2009. Defendants' counsel eventually filed an untimely appearance on November 13, 2009. Even after that filing, Defendants took no action to formally cure their defaults. Defendants waited until *after* Magistrate Wall issued his Report and Recommendation on December 30, 2009 (which recommended default judgments and damages against all Defendants) before Defendants formally moved to vacate their defaults.

Defendants' sole excuse for their default and delay is that their counsel made a single phone call in July 2009 to State Farm's counsel inquiring if a settlement could be reached. Defendants offer nothing else to justify their indefensible disregard for the legal proceeding they knew had been initiated against them – no circumstances that prevented making a timely appearance; no averments that State Farm agreed to extend Defendants' time to respond to the complaint or not enter defaults against Defendants; and no confirming correspondence or emails to support any suggestion that Defendants were lulled into a false sense of security.

Defendants plainly have no regard for this Court or its rules, and deliberately chose to default and do nothing for more than 6 months. It was only after seeing the Magistrate's Report and Recommendation in December 2009, which awarded State Farm more than $3 million in damages against Dr. Cohan, that Defendants belatedly decided to file a thin motion on a pretext and seek vacatur of the defaults.

That behavior should not be sanctioned by this Court. Defendants should not be allowed to willfully default, sit idly by for months while the parties and the Court waste time and money proceeding with default judgments and assessing damages – and then – after the time, money and effort are expended and a recommendation for default judgment is rendered by the Federal Magistrate, expect the Court to vacate all prior proceedings because Defendants, on a whim, decide that they do not like the Court's imposition of damages in the judgment.

Further, the judgment should not be vacated because Defendants do not have a meritorious defense to State Farm's claims in this case. Defendants' motion papers contain nothing but the most perfunctory denial of wrongdoing and fail to rebut in any meaningful way the detailed factual allegations in State Farm's complaint. Pursuant to well-settled case law, this type of conclusory -- "I didn't do it" -- allegation by Defendants is insufficient to establish a meritorious defense for purposes of vacatur of a default.

The record in this matter is clear: Dr. Cohan and the other Defendants were served with the Summons and detailed Complaint by State Farm, yet each failed to appear. Defendants consulted with more than one attorney regarding the Summons and Complaint. Defendants chose to ignore the date established by federal law for responding to the Summons and Complaint. Defendants chose to make no reasonable effort to cure their default. The Clerk entered their respective defaults. In October 2009, State Farm formally moved for default

judgments against Defendants. In December 2009, Magistrate Wall issued a Report and Recommendation recommending that default judgments be entered against each of the Defendants on the fraud, unjust enrichment and declaratory judgment claims, and that judgment be entered against Dr. Cohan on the RICO claim. Defendants untimely appeared by counsel in November 2009 and then did nothing else. Defendants deliberately defaulted, did not act in good faith, and have set forth no meritorious defense.

Under the circumstances, Defendants' motion to vacate their defaults should be denied.

## FACTS AND RELEVANT PROCEDURAL HISTORY

The facts relating to the claims in this action are more fully set forth in the Complaint. (Exhibit "A").[1] The facts relating to Defendants' defaults and State Farm's efforts to move the case forward are more fully set forth in the accompanying January 29, 2010 Declaration of Barry I. Levy, Esq. ("Levy Decl."). State Farm respectfully refers the Court to those materials. Briefly, however, this action involves claims for fraud, unjust enrichment, declaratory relief, and for violations of the civil RICO statute, based upon the following facts:

(i) Dental Health, LIDP, and NYDP (the "Dental PCs") – three professional dental corporations established and owned by Dr. Cohan – did not maintain stand-alone practice locations, were not owners of or leaseholders in the locations from which they operated, did not advertise for patients, and did not employ their own support staffs. Rather, the Dental PCs operated solely through a network of high volume "clinics" located throughout the greater New York metropolitan area (the "Referral Clinics").

(ii) Though ostensibly organized to provide a range of healthcare services at a single location to individuals covered by No-Fault insurance policies ("Insureds"), these Referral Clinics in actuality were organized to facilitate fraudulent treatment and billing schemes aimed at State Farm and other insurers, and to provide medically useless services to maximize charges that could be submitted for each Insured. Typically, these Referral Clinics housed one or more of the Dental PCs, as well as other professional corporations that ostensibly provided chiropractic, physical therapy, acupuncture and/or psychology services.

---

[1] Unless otherwise noted, all exhibits referenced herein are annexed to the Declaration of Barry I. Levy, Esq. submitted herewith.

3

> (iii) The Dental PCs, like the other professional corporations operating from the Referral Clinics, gained access to the Referral Clinics through the payment of kickbacks to the Referral Clinic owners, who were not dentists or healthcare professionals. The kickbacks were disguised as ostensibly legitimate fees to "rent" or "lease" space, equipment, or personnel from the Referral Clinics, or for "management" or "billing and collection" services allegedly provided by the Referral Clinics. In fact, these were nothing more than "pay to play" arrangements that caused the Referral Clinics to provide access to Insureds and to steer Insureds to the Dental PCs, without regard for whatever their individual symptoms – if any – might be.
>
> (iv) When an Insured entered a Referral Clinic, a receptionist or some other non-medical personnel would make referrals to one or another of the Dental PCs regardless of whether the Insured actually complained of mouth or jaw pain or had suffered facial or jaw trauma in the underlying automobile accident. In cases where the Insured would question the dental referral, he or she generally would be told that dental care was part of the treatment regimen or the "package" within the Referral Clinic, and that it was mandatory.
>
> (v) In some cases, Dr. Cohan or the other dentists prepared Initial Examination Reports out of whole cloth, because they never actually treated or even met the Insureds at all. In cases where Dr. Cohan or the other dentists at the Dental PCs actually performed the initial examinations, the Defendants frequently "upcoded" the examinations so as to maximize the fraudulent billing that could be submitted to State Farm and other insurers.
>
> (vi) The Initial Examination Reports routinely – and falsely – reported symptoms of some form of dental distress, whether or not the Insured actually presented with them – indeed, whether or not the Insured ever met with Dr. Cohan or one of the other dentists at the Dental PCs at all.
>
> (vii) Finally, in the billing they submitted to State Farm, the Defendants deliberately either misrepresented or omitted the employment status of the dentists and physical therapists other than Dr. Cohan. The Defendants engaged in these misrepresentations and omissions in order to conceal the fact that the dentists and physical therapists other than Dr. Cohan were independent contractors, for whom Defendants had no right to bill for or collect No Fault benefits.

See Complaint, Exhibit "A."

A true and correct copy of the Summons and Complaint was personally served on Dr. Cohan on July 16, 2009. Proof of service was filed with the Court via ECF on July 30, 2009. Similarly, true and correct copies of the Summons and Complaint were served on Dental Health,

LIDP, and NYDP via the New York Secretary of State on July 17, 2009. Proof of service was filed with the Court via ECF on July 30, 2009.

None of the Defendants timely appeared in this action.

On July 14, 2009, State Farm's counsel, Barry I. Levy, Esq., received a telephone call from Matthew Conroy, Esq., who inquired about the nature of the allegations against Dr. Cohan but stated that he was not formally retained. (Levy Decl. ¶ 6.)

On of July 20, 2009, Mr. Levy was contacted by telephone by an attorney by the name of Hilary Blumenthal, Esq., who was not formally retained by Defendants but who made a settlement proposal on their behalf. Id., ¶ 7. That same day, Mr. Levy called Mr. Conroy to advise him of Ms. Blumenthal's call and the proposal. Mr. Conroy indicated that Ms. Blumenthal would not likely be acting as counsel, but he nevertheless wanted to know whether State Farm would agree to a settlement on the terms suggested by Ms. Blumenthal, since he had authority to make a deal if that were the case. Id.

Days later, on July 30, 2009, Mr. Levy called Mr. Conroy to advise him that State Farm was not willing to accept his settlement proposal. Mr. Conroy again indicated during that call that he was still not engaged as counsel as of that point. Id., ¶ 8.

Since there was no further contact from Mr. Conroy or anyone on behalf of Defendants, and no formal appearance by any attorney on their behalf, State Farm proceeded to file notices of default against Defendants on August 11, 2009 with the Clerk of the Court via ECF. The Clerk of the Court entered the defaults of the Defendants on or about August 12, 2009 and issued Certificates of Default.

Thereafter, on August 20, 2009, Mr. Conroy called Mr. Levy to advise that, though not yet retained, he was going to be. He requested that State Farm vacate the defaults against Dr.

5

Cohan and the PCs. Id., ¶ 10. Mr. Levy called back the following day, August 21, 2009, and advised that State Farm would not agree to vacate the defaults. Id. No further communication was received from Mr. Conroy until receipt of the moving papers herein on or about January 6, 2010. Id., ¶ 11.

By Order dated October 6, 2009, this matter was referred to Magistrate Wall for a report and recommendation as to whether formal judgments of default should be granted and to determine the appropriate amount of damages, costs, and/or fees.

On October 30, 2009, State Farm filed and served on Defendants a Memorandum of Law and Declaration of Barry I. Levy in support of its request for formal default judgments and damages against Defendants. The papers were served on Mr. Conroy as well, given his informal contact on behalf of Dr. Cohan. Id., ¶ 12.

On or about November 13, 2009, Matthew Conroy, Esq. and Maria Campese Diglio, Esq, filed notices of appearance on behalf of all Defendants.

On December 30, 2009, Magistrate Wall issued his Report and Recommendation. Magistrate Wall recommended that State Farm be awarded $1,006,161.93 in damages on the state claims, RICO treble damages of $3,018,485.79 from Dr. Cohan, along with prejudgment interest of $436,738.12.

Thereafter on or about January 6, 2010 -- and more than six months after service of the Summons and Complaint -- Defendants filed a motion to vacate their defaults.

## ARGUMENT

### I.  The Standards to Vacate Default

Rule 55(c) of the Federal Rules of Civil Procedure authorizes a court to "set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." In this case, no final default judgment has been rendered, but the Magistrate has issued a Report and

6

Recommendation recommending the formal issuance of default judgments and damages against all Defendants.

In considering a motion to vacate, "courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied." Richardson v. Nassau County, 184 F.R.D. 497 (E.D.N.Y. 1999). In the context of a motion to set aside a default or default judgment, the Second Circuit has stated that courts must principally assess (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993); SEC v. McNulty, 137 F.3d 732, 738 (2d. Cir. 1998); Richardson, supra; Gesualdi v. Tapia Trucking, Inc., 2009 U.S. Dist LEXIS 82958 (E.D.N.Y. 2009). Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result. Id.

## II.     Defendants' Defaults Were Willful

In determining whether a party willfully defaulted, a court will consider whether the defendant's conduct "is deliberate or egregious or is carried out in bad faith." See Hernandez v. La Cazuela de Mari Restaurant, Inc., 538 F.Supp. 2d 528, 532 (E.D.N.Y. 2007); Gesualdi, supra, at *4. Where a party makes a strategic decision to default, it is not appropriate for a court to vacate a default judgment. See Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 60 (2d Cir. 1996); Hernandez, supra.

In this case, Defendants' defaults were deliberate and in bad faith or, at best, a strategic decision to delay by defaulting. Defendants admit service of State Farm's complaint in July 2009 and admit that Dr. Cohan met with his counsel in July, 2009. Defendants, however, did nothing while State Farm filed applications for certificates of default on August 11, 2009 and did

7

nothing after the Clerk of the Court issued such certificates on August 12, 2009. Defendants continued to ignore their legal obligations even after State Farm formally filed for default judgments on October 30, 2009.

Defendants' counsel filed an untimely appearance on November 13, 2009. Incredibly, however, even after this untimely filing, Defendants took no action to formally cure their defaults or prevent the Court from proceeding with the processing of formal default judgments and assessing damages. Defendants waited until *after* Magistrate Wall issued his Report and Recommendation on December 30, 2009, which recommended default judgments and damages against all defendants, before they formally moved to vacate their defaults. It was only after seeing the Magistrate's Report and Recommendation that Defendants belatedly decided to try and seek vacatur of the defaults.

Defendants' *sole* excuse for their default and delay is that Defendants' counsel made a single phone call in July 2009 to State Farm's counsel inquiring if a settlement could be reached. Defendants offer nothing else – no averments that State Farm agreed to extend Defendants' time to respond to the complaint; no averments that State Farm agreed not to enter defaults against Defendants; and no confirming correspondence or emails evidencing that Defendants allegedly were lulled into a false sense of security. Defendants also offer no specifics, like dates, times, or details of conversations, to support their specious contention that they were lulled into a false sense of security.

Defendants' excuse for their default is a flat out misrepresentation. While a phone call between Defendants' counsel and State Farm's counsel did take place in July 2009, State Farm did not lead Defendants on, did not give them a false sense of security, and did not suggest that settlement discussions were ongoing. See Levy Decl.

8

In addition to Mr. Levy's Declaration, the actions by State Farm and the Court to enforce the defaults refute Defendants' allegation that they were misled into a false sense of security after the phone call in July 2009. For example, (i) State Farm filed applications for certificates of default in August 2009; (ii) the Clerk of the Court issued certificates of default on August 12, 2009; (iii) the Court issued an Order on October 6, 2009 referring the matter to Magistrate Wall for issuance of formal default judgments and assessment of damages; and (iv) State Farm filed and served further papers on October 30, 2009 in support of its formal request for default judgments and damages. It is not reasonable, nor believable, that Defendants and their counsel were confused about State Farm's intentions in this case.

Defendants' counsels are sophisticated practitioners, well versed with the federal courts from multiple prior representations of doctors and healthcare professionals in similar types of litigation matters. They plainly were aware, or easily could have made themselves aware, of all ongoing court proceedings against their clients, or prospective clients, as the case may be. Tellingly, Defendants' counsel state that they made "numerous requests to Mr. Levy to have the default vacated" but admit no consent was ever provided. It is, therefore, preposterous for Defendants' counsel to allege that Defendants were lulled into a false sense of security such that *they did absolutely nothing* to reverse the defaults until January 6, 2010.

Defendants clearly sat idly by for 6 months while the parties and the Court wasted time and money proceeding with default judgments and assessing damages. Once the Magistrate issued his Report and Recommendation, Dr. Cohan presumably decided it was strategically time to challenge the defaults since damages were assessed against him personally.

Courts faced with similar circumstances have concluded that the defaults were willful. For example, in Hernandez v. La Cazuela de Mari Restaurant, Inc., 538 F. Supp. 2d 528

(E.D.N.Y. 2007), the Court held that the defendants' conduct was deliberate and willful where they employed a "wait and see" litigation strategy. The Court stated that it may have been reasonable for the defendants to rely, early on, on their attorney's representations that "everything was fine" but once they received notice that they had defaulted they should have hired other counsel or appeared pro se. Id. at 533. Instead, the defendants chose to hire another attorney only after the Magistrate issued his Recommendations awarding the plaintiffs over $300,000 in damages. Id. at 533-34.

Similarly, in Gesualdi v. Tapia Trucking, Inc., 2009 US Dist. Lexis 82958 (E.D.N.Y. 2009), the court found that the defendant, while conceding that it received a request to enter default judgment, failed to take any action until a restraining notice and information subpoena were served on its bank. Id. at *6. The fact that the defendant made a decision to ignore the default until being prodded into action by the bank restraining notice weighed against granting the defendant's request to vacate the default. Id.

The Second Circuit has held that "willful" default refers to conduct that is more than merely negligent or careless. SEC v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). However a willful default includes situations where the conduct of counsel or the litigant was egregious and not satisfactorily explained, including situations where an attorney failed to respond to a summary judgment motion, or where, for flimsy reasons, failed to comply with scheduling orders, or failed to appear for a pretrial conference and delayed more than 10 months before moving to vacate the default. Id. at 738-39. Here, the knowing default and inaction by Defendants and their counsel in waiting over 6 months, and moving to vacate only after the Magistrate issued his Report and Recommendation, is not mere negligence or carelessness. It is patently intentional, deliberate, and willful.

Under these circumstances, there can be no other finding but that the Defendants' defaults were willful and in bad faith.

### III. Defendants Fail To Present a Meritorious Defense

While a defendant need not prove his defense to vacate an entry of default, he must present some *evidence* beyond conclusory denials. Enron Oil Corp. v. Diakuhara, 10 F. 3d 90, 98 (2d Cir. 1993); SEC v. Breed, 2004 US Dist Lexis 16106, *37 (S.D.N.Y. 2004); Gesualdi v. Tapia Trucking, Inc. 2009 US Dist Lexis 82958 (E.D.N.Y. 2009). Defendants' moving papers do not come close to establishing a meritorious defense as they contain the barest of conclusory denials – and no evidence whatsoever.

State Farm's Complaint in this matter is 36 pages long, with multiple exhibits and supporting evidence. It describes a fraudulent scheme involving multiple components, including among other things:

(i) Dr. Cohan's operation of the defendant Dental PCs through a network of high volume "clinics" located throughout the greater New York metropolitan area (the "Referral Clinics") that were organized to facilitate fraudulent treatment and billing schemes and to provide medically useless services to maximize charges that could be submitted for each patient.

(ii) The payments of kickbacks by the defendant Dental PCs to the Referral Clinic owners, who were not dentists or healthcare professionals.

(iii) The preparation of Initial Examination Reports out of whole cloth where Dr. Cohan and the Dental PCs never actually treated or even met the patients at all.

(iv) The regular use of a fraudulent temporomandibular joint disorder ("TMD") diagnosis to support the Dental PCs' submission of a pre-determined, laundry-list of fraudulent charges over and above the charges for the initial examinations, including billing for orthotic devices, diagnostic casting, physical therapy, muscle testing, and range of motion testing.

11

(v) The "upcoding" of the examinations to falsely represent that the examinations were lengthier and more complex than they actually were to maximize the fraudulent billing in those instances where Dr. Cohan and the Dental PCs may have actually seen a patient.

(vi) The "unbundling" of tests to falsely represent that these services were provided on a different date than the initial examinations.

(vii) The submission of charges for dental goods and services that were provided (if at all) by individuals not employed by the Dental PCs in violation of the No fault reimbursement regulations.

State Farm's Complaint specifies the scheme in detail, and sets forth causes of action for declaratory judgment, violations of RICO, common law fraud, and unjust enrichment supported by detailed allegations and evidence of kickbacks, fraudulent examination reports, phony diagnoses, medically unnecessary treatments, fraudulent upcoding and unbundling, fraudulent billing for mouth guards and physical therapy, and fraudulent use independent contractors.

State Farm also details in its Complaint Dr. Cohan's history of wrongdoing, including the finding of professional misconduct (including filing false claim forms) by the New York State Department of Education and the indictment issued by the Grand Jury sitting in the United States District Court for the Eastern District of New York based on Dr. Cohan's submission of more than $600,000 in false insurance claims to Metropolitan Life Insurance Company.

In response to State Farm's 36-page Complaint, Dr. Cohan submits an Affidavit that contains a single fact sentence, in which Dr. Cohan vaguely and summarily states that he "believe[s] that every dental treatment...was medically necessary and in no way fraudulent or misrepresentative in any way of what I actually performed, what I billed for it or whether it was

12

necessary." Defendants' counsel's Memorandum of Law merely repeats this conclusory statement and offers not a shred of other factual evidence.

Dr. Cohan's Affidavit and Defendants' counsel's Memorandum of Law are palpably insufficient to support vacatur of Defendants' defaults. The statements in these documents are conclusory, are devoid of facts or evidence, and do not address the detailed allegations in State Farm's Complaint. They amount to nothing more than a bald "I didn't do it" defense. This is not a meritorious defense. See SEC v. Breed, supra at *39 ("With regard to defendants' affidavits, I am reminded of the common wisdom expressed by Judge Casey in *DirectTV*, cited supra, which is that "I didn't do it" is not a meritorious defense....defendants are obligated to assert facts rather than conclusory statements"); Gesualdi, supra at *7 ("Defendant presents no facts or information beyond its conclusory and unsworn statement that it does not owe plaintiffs any money, and thus has not sustained its burden of proof.")

Defendant's only other statement as to a purported meritorious defense is another single sentence in Dr. Cohan's Affidavit and Defendants' Memorandum of Law contending that the "vast majority of the claims at issue were services performed as many as ten (10) years ago and the statute of limitation on any such actions must have expired by law." There is, however, absolutely no support for this statement, no factual evidence submitted, and no discussion of any of the applicable statutes of limitations (including the discovery rules) for State Farm's claims for declaratory judgment, violations of RICO, common law fraud, and unjust enrichment.

As set forth in State Farm's Complaint, Dr. Cohan's Dental PCs, which submitted the claims at issue, were incorporated in March 2000 (Dental Health Care, PC), February 2003 (New York Dental Pain, PC), and February 2003 (Long Island Dental Pain PC) and thus the services at issue were obviously performed under 10 years ago, contrary to Dr. Cohan's conclusory

13

assertion. In fact, as set forth in the Affidavit of State Farm submitted in support of State Farm's motion for default, State Farm issued checks for payments to the Dental PCs into 2009. Moreover, the accrual date of certain of the claims in State Farm's Complaint depends on the date that State Farm discovered the fraud – and Dr. Cohan has not submitted a shred of evidence supporting discovery of the fraud or the expiration of any applicable statute of limitations.

In short, Defendants have not met their burden of showing any meritorious defense to State Farm's Complaint.

### IV. State Farm Is Prejudiced By Vacatur of the Defaults

Defendants' motion to vacate summarily states that State Farm has not suffered any prejudice. This is untrue. State Farm has already sustained substantial prejudice in connection with the considerable resources it has spent in attempting to move this case forward, including the efforts required by the Court after it referred the matter to Magistrate Wall and directed that State Farm submit further information to assess damages against Defendants. See SEC v. Breed, 2004 US Dist Lexis 16106 at *40 (S.D.N.Y. 2004).

Moreover, State Farm's Complaint is grounded in fraudulent conduct. Critical evidence of fraud is often in possession of the parties who have committed the fraud and is otherwise more fleeting than other types of evidence. Dr. Cohan's default in the matter, and failure to remedy the default for so long, has resulted in the passing of more than 6 months during which time the evidence of fraudulent conduct could have been destroyed or concealed. At minimum, the value of such evidence has almost certainly diminished with the passing of time.

The lapse of time is particularly harmful in this case where State Farm's Complaint alleges that Dr. Cohan operated the Dental PCs through a network of high volume clinics located throughout the greater New York metropolitan area; that the Dental PCs paid kickbacks to the clinic owners who were not dentists or healthcare professional; and that the fraudulent treatment,

14

billing and use of independent contractors was part of the treatment regimen or the "package" within the clinics. It is virtually certain that the delay of more than 6 months caused by Dr. Cohan has prejudiced State Farm's ability to obtain "fresh" evidence from the non-parties involved and to, at least some degree, prosecute this case.

Finally, Dr. Cohan has already pled guilty in an insurance fraud scheme in connection with the Port Authority of New York and another insurer. It is virtually certain that the delays have given Dr. Cohen additional time to hide or transfer his ill-gotten profits, and have otherwise prejudiced State Farm in its ability to promptly collect on any judgment actually rendered.

## V. Defendants' Remaining Arguments In Support of Vacatur Are Meritless

In further support of their motion, Defendants raise a scattershot of other arguments, none of which support vacatur of the defaults.

For example, Defendants state that State Farm's Complaint is supported in large part by the affidavit of Stanley Frankel, DDS, and point out that he was indicted for insurance fraud. What Defendants ignore, however, is that (i) the indictment was dismissed and (ii) Dr. Frankel was indicated *because of the conduct of Dr. Cohan* and the Dental PCs. As set forth in Dr. Frankel's affidavit, Dr. Frankel's indictment was based on his examination of an undercover agent from the New York State Attorney General's Office who posed as an accident victim. <u>Dr. Frankel concluded, and noted in his report, that no treatment was necessary – but Dr. Cohan billed Hartford Insurance Company for more than $3,000 using reports and bills bearing Dr. Frankel's forged signature.</u> [2]

Defendants also seek vacatur arguing that Magistrate's Wall's proposed imposition of a judgment against Dr. Cohan in an amount exceeding $3 million is "unfair and harsh" as it

---

[2] See Dr. Frankel's Affidavit annexed to State Farm's Complaint. See also 1/29/10 Declaration of Dr. Frankel's attorney submitted herewith, confirming that the indictment was dismissed.

15

represents three times the amount that State Farm paid to Dr. Cohan and the Dental PCs. But that is the plain result of the legislature's enactment of RICO, which awards treble damages. If Dr. Cohan has a problem with that result, he should have appeared and defended in this action, rather than deliberately defaulting.

In sum, Defendants deliberately chose to default in this matter and, with full knowledge of the consequences, did nothing for more than 6 months while State Farm and this Court expended time, effort, and money assessing damages against Defendants based on their default. Defendants' bad faith, and their perfunctory "I didn't do it" defense, warrant denial of their motion to vacate their defaults.

## CONCLUSION

For the reasons stated herein, Defendants' motion to vacate the defaults should be denied it its entirety.

Dated: Uniondale, New York
       January 29, 2010

                                        Respectfully submitted,

                                        RIVKIN RADLER LLP

                                        By: _____
                                        Barry I. Levy (BL 2190)
                                        Michael A. Sirignano (MS 5263)
                                        Max Gershenoff (MG 4648)
                                        926 RXR Plaza
                                        Uniondale, NY 11556-0926
                                        Tel.: (516) 357-3000
                                        Fax: (516) 357-3333
                                        barry.levy@rivkin.com

                                        *Counsel for Plaintiff, State Farm Mutual*
                                        *Automobile Insurance Company*

2328759 v2